## Philip Wolf and Emma Wolf v. George W. Booker.

1. STATUTE OF FRAUDS—*Defense of, to be Pleaded Specially.*—A contract subject to the statute of frauds is voidable only, and not void *ipso facto;* it can be enforced as made if the opposite party does not take advantage of the statute.

2. SAME—*Defense of the Statute Can Not be Made on a General Demurrer.*—The defense of the statute of frauds can not be made by a general demurrer. A general demurrer does not present this defense, even when it appears on the face of the declaration that the contract sued upon is voidable. The statute must, in some way, be specially pleaded.

3. SAME—*Form of the Remedy Where Suit is Brought for the Recovery of Goods Delivered Under an Invalid Contract for the Sale of Land.* —Where a suit is brought for the recovery of the value of goods delivered in payment of real estate under an oral contract voidable by the statute of frauds and which the purchaser refuses to perform, the form of the remedy is trover, detinue or replevin.

Assumpsit, for goods sold and delivered. Appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding. Heard in this court at the February term, 1901. Reversed. Opinion filed September 4, 1901.

KRAMER, CREIGHTON & SHAEFFER and B. H. CANBY, attorneys for appellants.

MESSICK, MOYERS & CROW, attorneys for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

This case was decided at the February term, 1900, of this court. A petition for rehearing having been granted, and the case reconsidered, the original conclusion of the court is adhered to, but the opinion is somewhat modified, and as modified is filed as follows:

This case is before this court upon a demurrer to the first amended additional count of the declaration, all other counts being dismissed. The court overruled the demurrer and appellant abided by his demurrer. The court, after hearing evidence as to the value of the property, rendered judgment for appellee for $1,300.

The count in substance is as follows:

George W. Booker, the plaintiff, complains of Philip Wolf and Emma Wolf, defendants, that on the 1st day of July, A. D. 1899, the plaintiff owned a certain stock of groceries, goods, wares, etc.; that plaintiff then and there sold to the defendants and the defendants purchased of the plaintiffs the said stock of groceries, goods, wares, etc.; that as the consideration for the said sale of the said goods, etc., to the defendants, they, the said defendants, agreed orally, to and with the plaintiff, to pay therefor the sum of $1,300, to wit: to convey to the plaintiff one lot of ground situated in the city of East St. Louis, Illinois, of the value of $1,200, and the further sum of $100 in cash; that the plaintiff, in consideration of the undertaking on the part of the defendants as aforesaid, delivered to the defendants the said stock of goods, etc., and said defendants accepted the said goods, etc., and went into the possession thereof, and still remain in the possession thereof. Plaintiff avers that after the defendants had gone into possession of said stock of goods, etc., they refused to convey to the plaintiff the said lot of ground or to pay to the plaintiff the said sum of $100 as aforesaid. And the plaintiff avers that afterward, on, to wit, the 3d day of July, A. D. 1899, he, the plaintiff, demanded of the defendants that they convey said real estate to the plaintiff and pay him the said sum of $100,

and that the defendant refused to convey to the plaintiffs the said real estate or to pay the said sum of $100 as they had agree to do. The plaintiff avers that the said defendants then and there thereby became liable to pay to the plaintiff so much as the stock of goods, etc., were reasonably worth at the time they were delivered to the said defendants, and that being so liable the said defendants in consideration thereof undertook and promised to pay to the plaintiff, on request, so much as said stock of goods, etc., were reasonably worth; and the plaintiff avers that all of the said personal property was then and there reasonably worth the sum of $1,300. Yet the defendants, though often thereto requested, have not paid the plaintiff the said sum of $1,300 or any part thereof, but refused so to do, to the damage of the plaintiff of $1,500, and therefore he brings this suit.

It will be noted that the appellee does not seek to recover the value of the lot and $100, but does seek to recover the value of the goods, etc., delivered by them to appellants. In other words, appellee, by his declaration, does not seek to enforce the contract as made. This is declared by counsel for appellee in their argument, in which they say, "We are not seeking to enforce a contract within the statute of frauds, nor any portion of such contract, nor to recover damages for its non-performance," etc. And again in their petition for rehearing they say, "We have always, and now, recognized that we can not enforce the contract to convey the lot, either in law or in equity." This is upon the doctrine that a verbal contract within the statute of frauds can not be enforced, either directly or indirectly, and can not be made either the ground of a demand or a defense. McGinnis v. Fernandez, 135 Ill. 69; Leach v. Ritzke, 86 Ill. App. 483.

This proposition is subject, however, to limitation. A contract subject to the statute of frauds is only voidable, and not *ipso facto* void. Appellee could have enforced the contract as made, if appellants did not take advantage of the statute. Testing this case by the pleadings of appel

lants, they have not availed themselves of the defense of the statute. Their demurrer is a general demurrer, and such a demurrer does not present this defense, although it appears from the declaration that the contract is voidable. The statute must in some way be specially pleaded. Kinzie v. Penrose, 2 Scam. 520; Dyer v. Martin, 4 Scam. 151; Tarleton v. Vietes, 1 Gilman, 473; School Trustees v. Wright, 12 Ill. 432; Chi. Coal Co. v. Liddell, 69 Ill. 640.

The contract being only voidable, and not void, appellee could have enforced it, for anything that appears in appellants' pleadings. Dyer v. Martin, *supra;* Collins et al. v. Thayer, 74 Ill. 140.

But appellee had the same legal right to avoid the contract as had appellants. He could, if he so desired, recover in a proper form of action from appellants the property he had delivered to them. Or, if they, refusing to carry out the original contract, had sold the property received from appellee, or had so converted it to their use as to destroy its identity, he could waive the tort and recover, in assumpsit, what they received for it if sold, or what it was reasonably worth if its identity had been destroyed. But in such case, a demand for the return of the property delivered and a refusal would have to be averred and proved. This condition precedent does not appear in appellee's declaration. It avers a demand for the conveyance of the lot and the $100, but does not aver any demand and refusal for the property delivered to appellants, or that it was sold by them or its identity destroyed.

The declaration stating an express contract and the refusal of appellants to comply with it, avers a liability upon an implied contract arising out of such refusal. Until appellants had, in some appropriate way, avoided the express contract which they had made, and which by their demurrer they admit, and which could be enforced against them if not by them avoided, they could not be held liable upon an implied contract.

A contract can not be implied when an express contract exists.

" An express and an implied contract can not co-exist." Reed on Statute of Frauds, Sec. 495; Chas. P. Kellogg & Co. v. James H. Turpie, 93 Ill. 265.

Jennings v. Camp, 13 Johnson, 94, quotes with approval as follows:

" What Lord Kenyon said in Cutler v. Powell, 6 Term Rep. 320, that when the parties have come to an express contract, none can be implied, has prevailed so long as to be reduced to an axiom of law."

In Galvin v. Prentice, 45 N. Y. 162, it is said:

" The express promise appearing upon the plaintiff's own showing, although it can not be enforced by reason of the statute, excludes an implied promise."

If these authorities state the law, it is clear that appellee can not recover upon an implied contract, when he has set out an express one, which appellants have not sought to avoid by invoking the statute, but are in default in performance only.

Appellants' demurrer is then to be treated as saying, " We admit the original contract as stated in the declaration and do not seek to avoid it as invalid under the statute of frauds, and therefore say that the plaintiffs can not recover in assumpsit upon an implied contract under the allegations of their declaration, for the value of the goods and chattels they have delivered to us." In other words, they say by their demurrer, " If we do not seek to avoid the original contract, and plaintiff does not seek to enforce it, he must allege such conditions as make us guilty of a tort, before we are liable in assumpsit, if he sees fit to waive the tort and sue in assumpsit."

It is settled by numerous decisions in this State that a tort may be waived, and suit brought in assumpsit, but in such cases the tort must first exist. The reception of the goods delivered by appellee to appellants and the failure of appellants to convey the lot and the hundred dollars, did not of itself amount to a tort. The refusal to re-convey the property delivered when demanded would have constituted a tort, for which replevin or trover would have been the

appropriate action, unless the property had been sold or its identity destroyed by appellants, when assumpsit could have been maintained.

This seems to have been the doctrine laid down in Updike v. Armstrong, 4 Ill. 564, the earliest case upon this point. This was a suit in assumpsit to recover for goods, wares, etc., delivered in part payment of a farm under an oral contract. In referring to an instruction the court say:

"Even admitting the plaintiff could recover without a refusal on the part of the defendant to perform, or some other act including an intention on the part of the defendants to disavow, disaffirm or repudiate the parol agreement, still he could not recover the value of the property in this form of action. He should have resorted to his action of replevin, or trover and conversion."

Johnson v. Deverill et al., 61 Ill. 317, is in line with this early decision. In this case the contract was in writing and under seal, and the defendant refused to convey a lot for the consideration of a horse and buggy he had received. The plaintiff could have enforced the original contract but he sought to recover the value of the horse and buggy. This could only be upon an implied contract to pay for the horse and buggy arising from a failure to convey the lot. The court say, "the sale of the horse, buggy and harness, or their conversion in some way, would be the only ground upon which assumpsit would lie." So in the case at bar the sale of the property received by appellants or its conversion in some way is the only ground upon which assumpsit would lie to recover its value. Where money has been paid it may be recovered in assumpsit. In Reed on the Statute of Frauds, Sec. 627, the rule is stated as follows:

"The suit for money paid is assumpsit; for money had and received, for chattels delivered, the remedy is trover or detinue, and for labor a *quantum meruit*." "When the recovery of a chattel delivered under an invalid sale of land, the remedy is not assumpsit, but trover, detinue or replevin." Citing Shreve v. Grimes, 4 Litt. 223; Keath v. Patton, 2 Stew. 38; Duncan v. Baird, 8 Dana, 101; Atwood v. Fox, 30 Mo. 499; Updike v. Armstrong, 4 Ill. 565.

Many cases may be cited where a recovery upon a *quan-*

*tum meruit* was had for services rendered under a contract voidable by reason of the statute of frauds. This is for the reason that the services had been rendered and could not be returned. The parties can not be placed in *statu quo*. It is for the same reason that assumpsit will lie when the chattels have been sold or their identity destroyed.

Counsel cite decisions in other States to the effect that assumpsit will lie under the facts alleged in the declaration in the case at bar. But we prefer to follow the decisions of our own courts as we understand them, and the correct principles of pleadings as they appear to us.

Counsel for appellee in their petition ask as follows:

"If, on a rehearing and reconsideration of said judgment, this honorable court shall still be of the opinion that said judgment of the city court should be reversed, * * then appellee petitions this honorable court to so far reconsider its former judgment as to so modify the said judgment of reversal that appellee may appeal directly to the Supreme Court of Illinois from the judgment of the Appellate Court, the said appellee hereby electing to abide by his declaration."

In accordance with the request of appellee the former judgment of this court is so modified as to reverse without remanding the case of the City Court of East St. Louis, and rendering judgment for costs in favor of appellants and against appellee. Reversed.